RECEIVED
MAY 23 2024
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF OHIO

UNITED STATES OF AMERICA
*ex rel.* SAMMY L. CLEAVES,

and

SAMMY L. CLEAVES,

Plaintiffs,

v.

TAMMIE BENTLEY,

Defendant

FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)(2)

CASE NO. 2:24 CV 2899

Judge JUDGE WATSON

MAGISTRATE JUDGE DEAVERS

## COMPLAINT

**Plaintiff Sammy Cleaves states his Complaint:**

### INTRODUCTION

This action is brought under the False Claims Act, 31 U.S.C. § 3729 *et seq*. *Qui tam* to recover all available damages for violations of the False Claims Act, breach of contract, and unjust enrichment. Plaintiff Sammy Cleaves (herein "Plaintiff") rented an apartment from Tammie Bentley (herein "Defendant") pursuant to a federally regulated rent subsidy program known as the Section 8 Tenant Based Housing Choice Voucher Program ("Section 8 Program"). The program is administered locally by Licking County Metropolitan Housing Authority (LMHA). Landlords that rent under the Section 8 program are required to submit the proposed lease with the total contract rent amount for the unit. Based upon the lease, the landlord and LMHA enter into a Housing Assistance Payment (HAP) contract, which designates a certain portion of the rent as the tenant's responsibility. The remaining amount of rent is covered by a

subsidy from LMHA, with funds provided by the United States Department of Housing and Urban Development (HUD).

Defendant violated the law by 1) charging more for rent than originally certified in the HAP contract and the residential lease; 2) accepting HAP subsidy payments despite the increased rent charge; and 3) increasing Plaintiff's rental obligations beyond the amount stated in the HAP contract and residential lease As a result of Defendant's violations, the United States and Plaintiff experienced damages while Defendant was unjustly enriched.

The United States seeks all remedies available under the False Claims Act. Plaintiff seeks a statutory share of any awarded damages paid to the United States under the False Claims Act, in addition to costs and reasonable attorney fees, as well as damages for breach of contract and unjust enrichment claims.

## PARTIES

1. Plaintiff, Sammy Cleaves, was a tenant of the Defendant at the Premises located at 14603 Cleveland R. SW, Pataskala, Ohio, 43062, (hereinafter "the Premises"), from March 2013 through July 2023. From July 2017 onward, Plaintiff was a recipient of housing assistance from LMHA under the Section 8 program.

2. Plaintiff has a disability that will last for the rest of his life and receives Social Security Disability benefits. Plaintiff is currently receiving treatment for lung cancer from Mount Carmel Hospital and the Zangmeister Center. Plaintiff relies on the Housing Choice Voucher Program to maintain secure housing because his disability prevents him from working.

3. Plaintiff United States of America is *ex rel*. Sammy Cleaves.

4. Defendant Tammie Bentley is a private citizen who owns the Premises at issue in this matter and managed and acted as the landlord at the property where Plaintiff rented.

## JURISDICTION

5. This court has jurisdiction over the federal claim pursuant to 28 U.S.C. §§ 1331 and 1345, 1367, and 31 U.S.C. § 3732. This court has supplemental jurisdiction over the State of Ohio common law breach of contract and unjust enrichment claims pursuant to 28 U.S.C. § 1367(a).

## VENUE

6. Defendant committed the unlawful acts in Licking County in the State of Ohio. Venue is proper under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

7. The federal government instituted the Section 8 Program to assist low-income families with obtaining decent, safe, sanitary, and affordable rental housing; it is authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. §1437f, and governed by regulations contained in 24 C.F.R. Part 982.

8. Under the Section 8 Program, HUD enters into annual contribution contracts with public housing agencies (PHA), including LMHA.

9. Pursuant to the annual contribution contract, LMHA enters into a contract with the landlord of an existing dwelling to make monthly housing assistance payments on behalf of eligible tenants, subject to HUD approval; this contract is known as a Housing Assistance Payments Contract (hereinafter the "HAP contract").

10. The HAP contract establishes the monthly rental amount. LMHA pays any subsidy to which the landlord is entitled directly to the landlord.

11. The HAP contract may also provide that, based on the tenant's ability to pay, the tenant pay a portion of the rent in addition to the payments made by LMHA.

12. Generally, Section 8 participants pay 30% to 40% of their adjusted monthly income for rent and utilities, while LMHA pays the remaining balance.

13. In addition to the HAP contract, the landlord simultaneously enters into a lease agreement with the eligible tenant that must comply with federal regulations. The HAP contract establishes the initial lease term and initial monthly rent to the landlord which cannot be increased without a redetermination by LMHA.

14. The HAP contract includes provisions that the Owner must comply with Housing Quality Standards as determined by HUD.

15. Every year, participants in the Section 8 Program must undergo recertification by LMHA.

16. Plaintiff moved into the Premises in March 2013.

17. Prior to June 15, 2017, Plaintiff did not receive housing assistance from LMHA.

18. On May 22, 2017, Defendant signed a Request for Tenancy Approval for Plaintiff to receive housing assistance from LMHA under the Section 8 program. Defendant attested that the proposed rent for the Premises would be $725, and that Defendant would be responsible for all utilities. Plaintiff signed the Request for Tenancy Approval on May 24, 2017. LMHA received the signed, completed, Request for Tenancy Approval on May 25, 2017.

19. At all times hereafter mentioned, Plaintiff was a recipient of housing assistance from LMHA under the Section 8 Program due to a documented, permanent, disability. Plaintiff occupied the Premises continuously from June 15, 2017, through July 2023.

20. Throughout Plaintiff's participation in the Section 8 Program, LMHA had an annual contribution contract with HUD; pursuant to this contract, HUD provided money to LMHA to pay for housing assistance to Defendant on Plaintiff's behalf.

21. For the initial HAP contract, LMHA was to pay Defendant a housing assistance payment of $315 per month.

22. In the initial, and all subsequent, HAP contracts, Defendant agreed to pay for all utilities.

23. On June 15, 2017, Plaintiff and Defendant entered into a lease agreement, where Plaintiff would rent the Premises from Defendant in the initial amount of $725 per month.

24. Defendant entered into a HAP contract with LMHA on June 26, 2017.

25. In June 2018, the HAP contract with Defendant was amended and subsequently renewed, with the subsidy increasing from $315 to $328 and Plaintiff's obligation decreasing from $410 to $397. The total rent of $725 remained the same.

26. In June 2019, the HAP contract with Defendant was amended and subsequently renewed, with the subsidy increasing from $328 to $359 and Plaintiff's obligation decreasing from $397 to $366. The total rent of $725 remained the same.

27. In June 2020, the HAP contract with Defendant was amended and subsequently renewed, with the subsidy increasing from $359 to $384 and Plaintiff's obligation decreasing from $366 to $341. The total rent of $725 remained the same.

28. In June 2021, the HAP contract with Defendant was amended and subsequently renewed, with the subsidy increasing from $384 to $390 and Plaintiff's obligation decreasing from $341 to $335. The total rent of $725 remained the same.

29. In June 2022, the HAP contract with Defendant was amended and subsequently renewed, with the subsidy decreasing from $390 to $369 and Plaintiff's obligation increasing from $335 to $356. The total rent of $725 remained the same.

30. On May 3, 2023, Defendant informed Plaintiff that rent would be increasing to $1,000 starting on July 1, 2023. Plaintiff failed to inform LMHA of the increase at least 60 days prior to the change, or secure the permission of LMHA to increase rent, both of which are required by the HAP contract.

31. In June 2023, the HAP contract with Defendant was amended and subsequently renewed, with the subsidy decreasing from $369 to $337 and Plaintiff's obligation increasing from $356 to $388. The total rent of $725 remained the same.

32. For the duration that Plaintiff received housing subsidies, the HAP contract stated that Defendant would pay for utilities.

33. All monies paid to the Defendant landlord were related to rent and utilities.

34. Between July 2017 and July 2023, Defendant charged $850 for rent each month while certifying yearly that the monthly rent was $725 and accepting LMHA housing subsidy payments.

35. For at least 43 months during the tenancy, Defendant demanded and accepted $850 for monthly rent, despite the lease and HAP contract both setting the monthly rent at $725.

36. Between July 2017 and July 2023, when Plaintiff inquired about rent, Defendant repeatedly informed Plaintiff that the total rent he owed was $850. Plaintiff was not aware that Defendant was prohibited from charging him more rent than what was stated in the HAP contract. It was not until November 2021 that Plaintiff discovered that Defendant was bound

by the rent amount stated in the yearly HAP contract. As a result, Plaintiff did not realize that Defendant was privately overcharging him for rent until November 2021.

37. Plaintiff did not confront Defendant about the improper rent amount because he feared retaliation and the loss of stable housing.

38. On May 20, 2023, Plaintiff requested an inspection from LMHA due to a mice and ant infestation in the Premises.

39. On June 6, 2023, Defendant informed Plaintiff that his lease would not be renewed.

40. On June 13, 2023, LMHA notified Defendant of a failed inspection of the Premises due to the mouse and ant infestation.

41. On June 26, 2023, LMHA informed Defendant that it would no longer be providing tenant assistance to Plaintiff for the Premises.

42. Plaintiff vacated the Premises on or about July 31, 2023.

## FIRST CAUSE OF ACTION:

## VIOLATION OF FALSE CLAIMS ACT

43. Plaintiff incorporates the allegations set forth in paragraphs one (1) through forty three (43) as though pleaded herein in full.

44. The False Claims Act, 31 U.S.C. § 3729 *et seq.*, imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). Such person could be liable to the United States for not less than $5,000 and not more than $10,000, plus three times the damages suffered by the United States as a result of such person's actions. *See* 31 U.S.C. §3729(a)(1)(G).

45. The FCA defines "knowingly" to include, with respect to information, the actions of a person who acts in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information or has actual knowledge of the information; no proof of specific intent to defraud is necessary. 31 U.S.C. § 3729(b)(1). "Claim" is defined to include "any request or demand" for money made to a recipient if the United States, "provides or has provided any portion of the money or property requested or demanded", to advance a Government program or interest. 31 U.S.C. § 3729(b)(2)(A)(ii)(I).

46. Defendant agreed in Part B of the HAP contract, paragraph 7(b), that "[u]nless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract."

47. Defendant further agreed in Part C of the HAP contract, paragraph 5(e), that "[t]he owner may not charge or accept, from the family… any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities, and appliances to be provided and paid by the owner in accordance with the lease." Furthermore, paragraph 5(f) states that "[t]he owner must immediately return any excess rent payment to the tenant."

48. Defendant also agreed in Part C of the HAP contract, paragraph 4(a), (b) that "The initial rent to owner may not exceed the amount approved by the PHA [Office of Public and Indian Housing]… Changes in the rent to owner shall be determined by the provisions of the lease. However, the owner may not raise the rent during the initial term of the lease."

49. Defendant knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by officials of the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(B).

50. Defendant's endorsement and presentation for payment of each monthly housing assistance payment check, while knowingly charging tenant more for rent than what was listed in the HAP contract, constitutes a separate false claim or representation against the United States.

51. On information and belief, Defendant endorsed and presented for payment at least forty-three housing assistance payment checks, while knowingly imposing additional costs on Plaintiff.

52. The United States of America suffered damages as a result of these violations of the False Claims Act because the housing assistance payment money which HUD disbursed to LMHA for payment to Defendant under the Section 8 Program on behalf of Plaintiff would not have been paid to the Defendant absent Defendant's false claims and misrepresentations.

53. The United States sustained damages equal to all payments made to Defendant pursuant to Plaintiff's Section 8 assistance.

## SECOND CAUSE OF ACTION:

## BREACH OF CONTRACT

54. Plaintiff incorporates the allegations set forth in paragraphs one (1) through fifty-four (54) as though pleaded herein in full.

55. On June 15, 2017, Plaintiff and Defendant entered into a lease agreement wherein Plaintiff would pay $725 a month for rent and Defendant would be responsible for providing, as well as paying for, all utilities.

56. Defendant violated the terms of the lease agreement and HAP contract by charging Plaintiff $850 for monthly rent.

57. Defendant violated the implied warranty of habitability by refusing to remedy the mouse and ant infestation in the Premises in a timely manner after receiving notification of the issue from Plaintiff and the LMHA.

58. As a result of Defendant's breach, Plaintiff suffered damages and is entitled to monetary relief in an amount to be determined at trial.

### THIRD CAUSE OF ACTION:

### UNJUST ENRICHMENT

59. Plaintiff incorporates the allegations set forth in paragraphs one (1) through sixty-one (61) as though pleaded herein in full.

60. Plaintiff seeks recovery for Defendant's unjust enrichment.

61. Defendant overcharged Plaintiff on rent by at least $100, and up to $400, at least forty-six times between June 2017 and July 2023.

62. As a direct result of Defendant charging Plaintiff more than $725 total for monthly rent, Plaintiff has been forced to pay thousands more in rent between 2017 and 2023 than agreed to in the lease agreement.

63. It would be unjust for Defendant to retain funds acquired through a breach of the lease agreement between Defendant and Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the United States of America respectfully request the following relief:

A. Find that Defendant violated the False Claims Act and is liable to the United States.

B. Assess a civil penalty against Defendant for each separate violation of the False Claims Act in an amount to be determined at trial.

C. Award the United States three times the amount of damages that it sustained as a result of Defendant's acts.

D. Award the Plaintiff the *qui tam* Plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730(d).

E. Award Plaintiff damages sustained as a result of Defendant's breach of contract and unjust enrichment.

F. Award Plaintiff costs and reasonable attorney's fees under applicable Federal and State law.

G. Grant whatever other relief is just and proper.

Respectfully Submitted,

William Canterberry (0095874)
**Legal Aid of Southeast and Central Ohio**
15 W. Locust St.
Newark, OH 43055
Phone 614.827.0507
Fax 740-345-2064
Email wcanterberry@lasco.org

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that the foregoing *Complaint* was delivered, via regular U.S. mail postage pre-paid, to:

Kenneth L. Parker
United States Attorney's Office
Southern District of Ohio
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215

Merrick Garland
Attorney General of the United States
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

_____
Attorney for Plaintiff